IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE,
WESTERN DIVISION AT MEMPHIS

---

ABDOUL BAH,

    Plaintiff,

v.                                                      No. _____

                                                     **JURY DEMANDED**

MILLSTONE MEDICAL OUTSOURCING,

    Defendant.

---

## COMPLAINT
---

COMES NOW Plaintiff, Abdoul Bah, and brings this action against his former employer Defendant Millstone Medical Outsourcing for race, religion and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## PARTIES

1.    Plaintiff, Abdoul Bah, ("Mr. Bah"), is a resident and citizen of Memphis, Shelby County, Tennessee and former employee of Defendant Millstone Medical Outsourcing ("Millstone").

2.    Defendant Millstone is a corporation doing business at 4800 E. Shelby Drive, Memphis, Shelby County, Tennessee, 38118.  Millstone provides customized outsourcing solutions to the medical device industry.  It offers advanced inspection, sterile and non-sterile packaging, loaner kit processing, and distribution services to device and product manufacturers.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action brought under 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981 pursuant to 28 U.S.C. §§ 1331 and 1343(4).  Mr. Bah filled a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  Mr. Bah filed his charge alleging race, religion and nation origin discrimination.  Mr. Bah received his Right to Sue letter and is filing his complaint within the prescribed statutory period.  Accordingly, Plaintiff has exhausted his administrative prerequisites.

4.      Venue is proper in the Western District of Tennessee under 28 U.S.C. § 1391 (b) and (c).  Defendant conducts business within the Court's jurisdictional limits and the claims at issue arose within the Court's jurisdictional limits.

## STATEMENT OF FACTS

5.      Mr. Bah was born in Guinea, West Africa and came to the United States of America in 2003.

6.      Mr. Bah is a member of the Muslim faith.  Mr. Bah openly practices his faith at work and at home.

7.      Mr. Bah applied for employment with Millstone and was hired by Millstone in October 2010 as a Loaner Kit Inspector.

8.      Mr. Bah signed the Millstone Employee Handbook that was drafted and provided by Millstone.

9. Mr. Bah also received a copy of From Sex to Religion, Harassment Prevention (Employee Version) Training Handbook provided by Millstone.

10. Mr. Bah and his colleagues worked on "the floor", a large open room with desks/tables, assembling medical kits for shipment to Millstone's customers.

11. Mr. Bah and his colleagues sat at assigned desks/tables on "the floor" while assembling medical kits.

12. There were approximately eleven (11) Millstone employees that worked on "the floor" including the plaintiff, Ronnie Muntz, the complaining co-worker, and their supervisor during the relevant time.

13. Mr. Bah and his co-workers were supervised by JoAnn Bowen.

14. Ms. Bowen sat at a desk/table at the front of "the floor" facing Mr. Bah and his ten (10) co-workers.

15. Ms. Bowen regularly walked around "the floor" talking with Mr. Bah and his colleagues and answering questions.

16. Mr. Bah was counseled once regarding several unexcused absences that occurred between March 15, 2011 and April 8, 2011.

17. Between April 12, 2011 and November 15, 2011, Mr. Bah did not have any unexcused absences and was not counseled by Ms. Bowen or the management team regarding his work.

18. Between April 12, 2011 and November 15, 2011, the management team rated Mr. Bah's work as satisfactory.

19. Prior to November 15, 2011, none of Mr. Bah's co-workers filed an "oral" or "written" sexual harassment complaint with Ms. Bowen, Mr. Bah's immediate supervisor, Ms. Debbie Brock, Millstone's Human Resources Generalist, or Karl Neuberger, Vice President of Operations at the Memphis, Tennessee Facility (collectively the "management team") against Mr. Bah.

20. Prior to November 15, 2011, no supervisory or management team member had any personal knowledge of any "oral" or "written" sexually harassment complaint against Mr. Bah.

21. Prior to November 15, 2011, no supervisory or management team member had any personal knowledge of any "oral" or "written" complaint regarding Mr. Bah possessing a gun on Defendant's property.

22. On November 15, 2011 while Ms. Bowen was on vacation, Ronnie Muntz, a caucasian male co-worker, filed an "oral" complaint against Mr. Bah with Ms. Brock.

23. The "oral" complaint alleges Mr. Bah sexually harassed Mr. Muntz and Mr. Bah was in violation of Millstone's Fire Arms Policy.

24. Over a period of one (1) week or five (5) business days, Ms. Bowen and/or the management team did not request or require Mr. Muntz put his "oral" complaint in writing.

25. Between November 15 and November 22, 2011, members of the management team spoke and discussed issues with Mr. Bah but never asked him about Mr. Muntz's "oral" complaint.

26. Without any "written" or "oral" proof of Mr. Bah possessing a gun on Millstone's property on November 22, 2011, a member of the Millstone management team called the Memphis Police Department to search Mr. Bah's vehicle.

27. Mr. Bah was asked to attend a meeting during the morning of November 22, 2011 with Ms. Bowen and Ms. Brock in the conference room.

28. On November 22, 2011, one (1) week or five (5) business days after Mr. Muntz filed his "oral" complaint, Ms. Bowen and Ms. Brock met with Mr. Bah for the first time regarding the "oral" complaint of him having a weapon in his vehicle.

29. When Mr. Bah arrived at the meeting, he was told three (3) police officers from the Memphis Police Department were outside to search his vehicle.

30. The management team summoned the three (3) Memphis Police Officers. The Memphis Police Officers entered the conference room and they asked to search Mr. Bah's vehicle at the request of the management team.

31. Because of Mr. Bah's race, religion and national origin, the management team had already decided to terminate Mr. Bah for allegedly possessing a gun on Millstone's property without any actual proof or credible information.

32. Mr. Bah denied the "oral" allegation that he had a gun in his vehicle on Millstone property.

33. Mr. Bah was told the Memphis Police Department Officers were present to search his vehicle and they required his consent.

34. Based on the conversation with the Ms. Bowden and Ms. Brock, Mr. Bah understood if he did not consent to the Memphis Police Department Officers searching his vehicle the management team would immediately terminate his employment.

35. Pursuant to Tennessee Code Annotated §39-17-1351, Mr. Bah possessed a valid Tennessee Handgun Carry Permit from the State of Tennessee.

36. There was no "oral" or "written" allegation that Mr. Bah currently had a gun in his vehicle and no management team member had any credible information that Mr. Bah currently had a gun in his vehicle.

37. Mr. Bah was forced to consent to the search of his vehicle by the Memphis Police Department Officers at the management team's request or suffer termination of employment.

38. Upon concluding a thorough search of his vehicle by the Memphis Police Department Officers, they did not find a gun in Mr. Bah's vehicle.

39. Following the search of his vehicle, Mr. Bah told a Memphis Police Officer he had a valid Tennessee Handgun Carry Permit from the State of Tennessee. The Memphis Police Officer told Mr. Bah if he had told them in the beginning, they would not have searched his vehicle.

40. The Memphis Police Officers informed Millstone's management team they did not find a gun in Mr. Bah's vehicle and he had a valid Tennessee Handgun Carry Permit from the State of Tennessee.

41. The Memphis Police Officers left Millstone and did not cite, arrest or charge Mr. Bah.

42. After the Memphis Police Department Officers did not find a gun in Mr. Bah's vehicle and based on the information provided by the Memphis Police Department Officers, the Millstone management team knew the "oral" allegation regarding Mr. Bah having a gun in his vehicle was false.

43. Although Millstone and its management team "allegedly" knew Mr. Bah had a gun in his car for five (5) business days based on the "oral" complaint, Millstone and its management team took no action to confront Mr. Bah before November 22, 2011.

44. Since Millstone and its management team did not take the "oral" allegation regarding a gun in Mr. Bah car seriously, they did not take any action for five (5) business days.

45. Millstone and its management team were not concerned about the potential actions of Mr. Bah and the safety of their business and employees. If they were concerned, they would have called the Memphis Police Department on the day of the "oral" allegation – November 15, 2011. Instead, they waited seven (7) days or five (5) business days before confronting Mr. Bah.

46. After the management team's outrageous conduct of calling the Memphis Police Department and their failed attempt to terminate Mr. Bah for having a gun on Millstone's property, they proceeded to the second unsubstantiated "oral" allegation.

47. The management team told Mr. Bah for the first time that Mr. Muntz "orally" alleged Mr. Bah sexually harassed him.

48. Mr. Bah denied the "oral" allegation of sexually harassment.

49. Mr. Muntz did not inform the management team when the alleged sexual harassment occurred.

50. Although Mr. Muntz "orally" stated he was allegedly sexually harassed, he was willing to buy shoes from Mr. Bah during this period of time.

51. The management team was so determined to terminate Mr. Bah employment they would take any action, false or otherwise, to accomplish this wrongful termination.

52. The management team was so determined to terminate Mr. Bah they failed to follow the Millstone Employee Handbook drafted by Millstone.

53. Millstone's Employee Handbook, Complaint Procedures, Harassment and Discrimination, p. 8, paragraph one (1) states, **"If your complaint is oral, we will ask you to write down all the details in order to assist in the investigation."** (Emphasis added)

54. The management team never asked Mr. Muntz to "write down" his "oral" complaint at any time prior to November 22, 2011.

55. Mr. Muntz never wrote in detail the facts he "orally" alleged and Mr. Bah did not have a copy of any written description of the facts to refute the allegation.

56. The management team did not follow Millstone's established Complaint Procedures regarding writing down the allegations.

57. Millstone's Employee Handbook, Complaint Procedures, Harassment and Discrimination, p. 8, numbered paragraph one (1) states, **"The investigation will be conducted in as confidential manner as possible while protecting the rights of <u>all</u> involved."** (Emphasis added)

58. The management team failed to investigate the "oral" allegation of sexual harassment against Mr. Bah.

59. The management team failed to protect the rights of Mr. Bah.

60. The management team never conducted a thorough investigation.

61. There were eight (8) other Millstone employees that worked on "the floor" during this alleged time period.

62. The management team did not interview any of the eight (8) employees regarding the "oral" allegation of sexually harassment.

63. Interviewing the other eight (8) Millstone employees and attempting to prove or disprove the "oral" allegations against Mr. Bah would have protected his rights.

64. The management team believed the "oral" allegations of Mr. Bah's caucasian co-worker without questioning the veracity or motivations of his "oral" allegations.

9

65. Failing to undertake a thorough or appropriate investigation of the facts did not protect "the rights of all involved" in this matter.

66. Allowing Mr. Bah to have a written description of the "oral" allegations would have allowed Mr. Bah to better refute the "oral" allegations against him.

67. The management team never presented Mr. Bah a written complaint of the "oral" allegations.

68. Millstone's Employee Handbook, Complaint Procedures, Harassment and Discrimination, p. 8, numbered paragraph two (2) states, "Any employee who is found, **after appropriate investigation,** to have violated any Company policies concerning discrimination or harassment will be subject to appropriate discipline." (Emphasis added)

69. The management team did not follow Millstone's own Employee Handbook.

70. Millstone's From Sex to Religion, Harassment Prevention (Employee Version) Training Handbook, Chapter Six: Your Responsibility states, "You should also write down as many details as possible about what happened, including a list of any other individuals who may have witnessed the incident, and submit it to the company official to whom you direct your complaint."

71. Millstone's From Sex to Religion, Harassment Prevention (Employee Version) Training Handbook, Chapter Eight: What to Expect If You Report Harassment states,

> The company takes all complaints of harassment seriously. **All complaints will be investigate promptly and thoroughly.** Investigators will be objective and complete.

> . . . To conduct an effective investigation and take appropriate corrective action, it may be necessary for the investigator to inform the alleged harasser of the complainant's identity and nature of the allegations, to notify the supervisor(s) of the parties involved, and to share relevant information with other company officials or advisors on a "need-to-know" basis.
>
> **Typically, the investigator will gather facts by interviewing the person reporting the harassment, the alleged harasser, and key witnesses name by one or both parties. The parties may be asked to prepare or sign a written statement to assist with the investigation.** (Emphasis added)

72. Mr. Bah did not know about the "oral" allegations until the meeting on November 25, 2011 with the management team.

73. Mr. Bah was not provided an opportunity to submit his position in writing.

74. Mr. Bah was not provided sufficient facts by the management team to provide a complete and unequivocal denial.

75. The management team refused to inform Mr. Bah of the complainant's identity during the November 22, 2011 meeting.

76. Millstone violated its own Millstone's From Sex to Religion, Harassment Prevention (Employee Version) Training Handbook.

77. There were eight (8) other Millstone employees that worked on "the floor" during the alleged time period.

78. The management team did not discuss the sexual harassment allegation with any of the eight (8) employees on "the floor" during the relevant time period prior to terminating Mr. Bah.

79. A thorough investigation includes interviewing some or all of the other eight (8) employees on "the floor" since Mr. Bah denied the "oral" sexual harassment allegation.

80. The management team had no factual basis to terminate Mr. Bah without thoroughly investigating the facts regarding the "oral" sexual harassment allegation.

81. The only investigation that occurred was Ms. Brock and Mr. Neuberger discussing the "oral" sexual harassment and the "oral" gun allegation with Ms. Bowen.

82. Ms. Bowen had no personal knowledge of the alleged "oral" sexual harassment complaint filed by Mr. Muntz before November 22, 2011.

83. Ms. Bowen had no personal knowledge of any acts of sexual harassment by Mr. Bah against Mr. Muntz before the complaint was "orally" filed on November 15, 2011.

84. Ms. Bowen had no personal knowledge of a gun in Mr. Bah's vehicle on November 22, 2011.

85. Mr. Muntz "orally" stated he moved his assigned desk/table to another part of "the floor" because of these alleged comments by Mr. Bah.

86. Mr. Muntz did not report these alleged statements by Mr. Bah to Ms. Bowen, his immediate supervisor, when he moved to another assigned desk/table.

87. Mr. Bah denied he sexually harassed Mr. Muntz during the meeting with the management team on November 22, 2011.

88. Mr. Bah was embarrassed and humiliated in front of his co-workers because the Memphis Police Department officers were called by Millstone's management team because of

these baseless "oral" allegations, Millstone's management team's outrageous acts and conduct, violations of the Millstone's Employee Handbook and Employee Training Book and the management team's failure to protect his rights and properly investigate the "oral" allegations.

89. No other Millstone employee had to encounter three (3) police officers threatening to arrest them for having a gun in their vehicle.

90. No other Millstone employee was summarily terminated without being provided a "written" statement of the charges.

91. No other Millstone employee was charged with sexual harassment without a "written" statement of the charges and an opportunity to review the "written" charge.

92. No other Millstone employee was summarily terminated without an "appropriate" and "thorough" investigation by the management team.

93. No other Millstone employee was summarily terminated without the management team interviewing potential witnesses to the alleged action.

94. These actions by the management team were taken because of Plaintiff's race, religion and national origin.

## CAUSES OF ACTION

1. Plaintiff incorporates paragraphs five (5) through ninety-four (94) above as though specifically set forth herein, and alleges that:

2. Defendant's actions constitute unlawful race, religion and national origin discrimination in violation of 42 U.S.C. § 1981;

13

3. Defendant's actions constitute unlawful race, religion and national origin discrimination in violation of 42 U.S.C. § 2000e et seq.

4. As a direct and proximate result of Defendant's unlawful discriminatory conduct toward Plaintiff, Plaintiff has lost wages and benefits and has sustained other pecuniary loss. Plaintiff, as a result of Defendant's actions, has suffered damaged to his career, as well as to his personal reputation. Defendant's discriminatory actions were demeaning to Plaintiff and caused him to suffer pain, humiliation, and embarrassment, as well as emotion distress; and

5. Defendant's unlawful actions complained of above were intentional, malicious, and taken in reckless disregard to the statutory rights of Plaintiff.

## PRAYER FOR RELIEF

1. WHEREFORE, the Plaintiff prays for the following relief:

   A. That proper process issue along with a copy of this complaint requiring Defendant to appear and answer;

   B. That Plaintiff be awarded damages in the amount of any wages, salary, employment benefits or other compensation, including, but not limited to back pay and the value of future lost benefits proximately caused by Defendant's unlawful conduct

   C. Front pay since reinstatement is not feasible;

   D. Any actual monetary loss sustained by the Plaintiff;

   E. Compensatory damages for emotional harm, suffering, humiliation, and embarrassment, to be determine by a jury;

   F. Punitive damages against Defendant in an amount to be determined by the jury;

G. All costs, disbursements, prejudgment interest, post judgment interest, expert witness fees and reasonable attorneys' fees allowed under this action brought pursuant to 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981;

H. Such other legal and equitable relief to which Plaintiff may be entitled; and

I. Plaintiff further demands a jury to try this case.

Respectfully submitted,

/s/ Odell Horton, Jr.
Odell Horton, Jr. (TN BPR No.12426)
Wyatt, Tarrant & Combs, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120
Tel: (901) 537-1000
Fax: (901) 537-1010
ohorton@wyattfirm.com

Attorney for the Plaintiff