**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **ABDOUL BAH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 12-2396-STA-tmp** |
| ) | |
| **MILLSTONE MEDICAL OUTSOURCING,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Millstone Medical Outsourcing's ("Millstone") Motion for

Summary Judgment (D.E. # 22) filed May 17, 2013. Plaintiff Abdoul Bah ("Bah") filed a

Response (D.E. # 25) on June 17, 2013. Millstone filed a Reply (D.E. # 27) on July 1, 2013. For

the reasons discussed herein, the Court **GRANTS** Millstone's Motion for Summary Judgment.

**BACKGROUND**

Except where noted, the Court finds the following facts undisputed for the purposes of

summary judgment.

Millstone provides customized outsourcing services to the medical device industry.

(Neuberger Aff. ¶ 2, D.E. # 22-3). Millstone maintains its corporate headquarters in Fall River,

Massachusetts and has a separate facility in Memphis, Tennessee. (*Id.* ¶ 3). At all times relevant

to this dispute, Millstone employed approximately thirty employees at its Memphis facility. (*Id.*)

All but three people at the Memphis facility at the times relevant to this dispute were black.

(Bah Dep. 176:17-25).

Millstone maintains an Employee Handbook ("Handbook") that Bah received when he first began with Millstone. (Bah Dep. 71:20-23). The Handbook contains several policies, including a policy prohibiting sexual harassment. (*See* Handbook, D.E. # 22-3). When an employee receives a copy of the Handbook, Millstone requires them to sign a document stating they received a copy and that they are responsible for reading and understanding it. (Brock Dep. 9:19-21). All Millstone employees are subject to the policies contained in the Handbook. (Brock Dep. 9:15-21). The Handbook states Millstone does "not tolerate verbal or physical conduct that harasses, disrupts or interferes with another's work performance or that creates an intimidating, offensive or hostile work environment." (Handbook at 99, D.E. # 22-3). The Policy further states that "[a]ny supervisor or employee found to have engaged in harassment will be subject to appropriate disciplinary procedures, including termination of employment." (*Id.* at 100). The Handbook also states that when an employee makes an oral complaint, Millstone will ask the complaining employee to write down the details to assist in the investigation. (*Id.* at 101). The Handbook states Millstone maintains an Employment-At-Will Policy, which allows either Millstone or an employee "to end the employment relationship at any time, with or without notice, for any reason or no reason at all." (*Id.* at 97).

In addition to the harassment policies outlined above, Millstone does not allow weapons on their property. (*Id.* at 130). The Handbook states

> [w]eapons of any kind (knives, hunting knives, rifles, guns, etc.) are strictly prohibited everywhere on company property including inside on [*sic*] any buildings, outside areas adjacent to any building or parking lots where employees park their vehicles. The fact that an employee may possess a lawful registration to own or to carry a weapon does not modify the express ban on the possession or carrying of all weapons on company property.

(*Id.*) However, the Handbook does not prohibit Millstone employees from private ownership of weapons. (Neuberger Dep. 21:16-18). While the Handbook describes certain policies and

procedures, the Handbook also states that it is not "intended to create a contract of employment for a definite term or a warranty or promise of policies or procedures to be followed[.]" (Handbook at 97).

Bah is a native of the Republic of Guinea, and came to the United States in 2003. (Bah Dep. 15:11-24, 27:13-17). Bah is also black and a practicing Muslim. (Bowen Dep 56:15-23; Bah Dep 177:17). Millstone hired Bah as a Loan Set Inspector in October of 2010. (Bah Dep. 71:20-23, 94:1-13). After Bah started with Millstone, he asked Tom Williams ("Williams"), the Millstone facility manager, if he and other Muslim employees could have a designated place to pray. (Bah Dep. 120:7-8). After checking with Human Resources, Williams told Bah this would be acceptable. (*Id.* 120:9-13). Bah's work station was in a small room[1] with approximately ten co-workers. (*Id.* at 166:2-3). For most of 2011, Bah worked next to Ronnie Muntz ("Muntz"). (Muntz Aff. ¶ 2, D.E. # 28-4; Bowen Dep 11:20-12:5, D.E. # 22-3). Joanne Bowen ("Bowen") supervised both Bah and Muntz. (Bowen Dep. 11:3-11).

On April 12, 2011, Williams issued a warning to Bah regarding several unexcused absences between March 15, 2011 and April 8, 2011. (Memo to File, D.E. # 22-3). Williams informed Bah that any further unexcused absences in the next ninety days would result in termination. (*Id.*) Bah did not have any more unexcused absences after receiving this warning. (Bowen Dep. 20:19-22; Bah Dep. 108:20-21). After this warning, Bowen noticed that Bah was more withdrawn at work.[2] (Bowen Dep. 20:23-21:14; Bowen Aff. ¶ 4, D.E. # 22-3). However,

---

[1] Millstone disputes the characterization of the room as small.

[2] Bah marks this fact as disputed, but directs the Court to no record evidence calling this fact into question. The Court determines this fact is undisputed for purposes of summary judgment.

between April 2011 and November 2011, Neuberger rated Bah's job performance as satisfactory. (Neuberger Dep. 27:3-7). Bowen thought of Bah as "a good inspector." (Bowen Dep. 20:2-4).

On August 3, 2011, Bah attended a Millstone-sponsored training entitled "From Sex to Religion" and completed a quiz on sexual and religious harassment. (From Sex to Religion at 74, D.E. # 22-3). Bah also received a copy of the "From Sex to Religion" training manual. (From Sex to Religion at 75, D.E. # 22-3).

On November 15, 2011, Muntz complained to Debbie Brock ("Brock"), Millstone's Human Resources Generalist, that over the past several months, Bah made both threatening and sexually harassing comments to Muntz. (Muntz Aff. ¶¶ 3, 6; Brock Dep. 23:19-26:4; D.E. # 22-3). Bah knew that Muntz is homosexual. (Bah Dep. 127:5-9). Muntz alleged Bah made repeated threats that he wanted to sodomize Muntz with various surgical instruments and a gun. (Muntz Aff. ¶ 3; Brock Dep. 24:10-19). Muntz also alleged Bah told Muntz that Muntz was "doomed to eternal damnation for being gay." (Muntz Aff. ¶ 3). Muntz told Brock that Bah said he wanted to have intercourse with his girlfriend on Muntz' bed. (Muntz Aff. ¶ 3). Muntz reported that Bah made all of these remarks out of the hearing of other employees. (Brock Dep. 78:18-25, D.E. # 22). Bah denies making any of these statements. (Bah Dep. 131:11-133:2, 141:8-22).

Muntz also told Brock about an incident in the late summer of 2011 where he attempted to purchase a pair of shoes from Bah in the Millstone parking lot. (Muntz Aff. ¶ 4). Muntz claimed that when he told Bah that the shoes did not fit him, Bah "pulled a gun on [Muntz]" from the glove compartment of Bah's car. (*Id.*) Bah denies that he had a gun in the Millstone parking lot, that he ever showed a gun to Muntz, or that he ever told Muntz he had a gun. (Bah Dep. 142:10-20). Millstone's only information about Bah's gun ownership at this time came

from Muntz. (Neuberger Dep. 57:4-9). Muntz did not allege that Bah had a gun on the

Millstone property at any other time. (*See generally* Muntz Aff.).

Muntz told Brock that he had not complained to Bowen because he was embarrassed to

discuss the problems with Bah with his supervisor and that prior to Brock's hire there was no

Human Resources presence in the Memphis location. (Brock Dep. 25:5-26:4).

After Muntz complained to Brock, Brock spoke with Karl Neuberger ("Neuberger"),

Vice President of Operations, and Lisa Cusson ("Cusson"), the Corporate Human Resources

Manager. (Brock Dep. 29:1-30:17; Neuberger Dep. 35:8-36:2). Bowen was out of the office on

vacation. (Brock Dep. 37:5-9). Brock, Cusson, and Neuberger immediately contacted

Millstone's counsel. (Brock Dep. 30:21-31:1). Over the next few days, Brock, Cusson,

Neuberger, and Millstone's counsel interviewed Muntz several times. (Brock Dep 35:24-36:6;

Neuberger Dep. 36:15-20). In these interviews, Muntz repeated the allegations against Bah.

(Neuberger Dep. 57:10-59:19). Millstone management did not interview Bah in response to

these allegations. (Brock Dep. 32:15-23; Neuberger Dep. 74:-4-16). Neuberger states he did not

interview Bah because of his concern that Bah might have a gun in his vehicle.[3] (*Id*.).

Bowen returned to the office on November 21, 2011, and Brock and Neuberger spoke

with her regarding Muntz' allegations. (Brock Dep. 43:14-44:4; Neuberger Dep. 63:5-64:4;

---

[3] Bah marks this fact as disputed, stating that nobody discussed calling the police on
November 15th. However, Bah cites to page 45 of Neuberger's deposition for support, which
makes no mention of whether anyone discussed calling the police. Further, that Millstone did
not contact the police immediately does not contradict the assertion that Neuberger did not
interview Bah out of safety concerns. Neuberger's assertion is that he was concerned that a
confrontation with Bah would escalate into violence. A police presence was not necessary to
alleviate this concern until Millstone actually confronted Bah regarding Muntz' allegations.
Although contacting the police and confronting Bah immediately was a course of action
available, that Millstone did not take this particular course of action in no way tends to show a
lack of concern. The Court determines this fact is undisputed for purposes of summary
judgment.

Bowen Aff. ¶ 6).  Bowen told Brock and Neuberger she had no personal knowledge of Bah

owning a gun or bringing a gun on Millstone property and nobody had told her that Bah brought

a gun on Millstone property.  (Bowen Dep. 34:10-21).  However, Bowen told Brock and

Neuberger that Bah had made it known to other employees at Millstone that he owned a gun.[4]

(Bowen Aff.  ¶ 7).

After interviewing Bowen and Muntz, Neuberger, Brock, and Cusson determined Muntz'

allegations were credible.[5]  (Neuberger Dep. 43:10-14, 45:8-11, 46:1-18, 49:7-15, 61:16-25,

82:22-83:8; Brock Dep. 31:8-25, 38:23-39:24).  Based on Muntz' allegations, Neuberger decided

to terminate Bah.  (Neuberger Dep.  75:5-11; Brock Dep. 49:20-50:1).  Neuberger, Brock,

Cusson, and Millstone counsel initially decided to terminate Bah at the end of the day on

November 21, but to reduce the possibility of other employees being in the parking lot decided to

postpone Bah's termination until the morning of November 22.[6]  (Brock Dep. 42:13-43:7;

Neuberger Dep. 77:17-78:20).

---

[4] Bah marks this fact as disputed, stating Bowen said she had no personal knowledge of
Bah owning a gun or bringing the gun to Millstone.  This does not call the factual assertion of
what Bowen told Brock and Neuberger into question.  The Court determines this fact is
undisputed for purposes of summary judgment.

[5] Bah marks this fact as disputed, stating Muntz' allegations were not credible and
detailing reasons why Neuberger, Brock, and Cusson should not have deemed them credible.
However, Bah's disagreement with Neuberger, Brock, and Cusson's evaluation of Muntz'
allegations does not create a disputed issue of material fact.

[6] Bah marks this fact as disputed, again arguing the Millstone management team was not
concerned about employee safety because they did not contact the police on November 15.
Again, the portion of the record to which Bah cites does not support this proposition.  The Court
takes this fact as undisputed for the purposes of summary judgment.

On November 22, 2011, Millstone requested a police presence at the facility to avert any safety issues stemming from Bah's termination.[7]   (Neuberger Dep. 79:16-21; Brock Dep. 48:1-23).  When the police arrived, Bah allowed them to search his vehicle.  (Bah Dep. 148:23-149:4).  The police searched Bah's vehicle, and did not find a gun.  (*Id.* 149:11-12, Brock Dep. 52:22-25).  Brock and Bowen then informed Bah that a fellow employee had made a complaint alleging sexual harassment against Bah.  (Bah Dep. 151:20-21; Bowen Dep. 40:22-24; Brock Dep 50:3-7; Bowen Aff. ¶ 8; Brock Aff. ¶ 7.)  Bah denied sexually harassing anyone and demanded to know the name of his accuser.  (Bah Dep. 151:23-24; Brock Dep. 51:6-7; Bowen Dep. 41:14-42:11).  Millstone refused to provide Bah with the accuser's name.[8]   (Bowen Dep 42:21-25).  Despite the fact that Muntz' accusations came down to Muntz' word versus Bah's, Millstone proceeded with Bah's termination.[9]   (Neuberger Dep. 52:16-20; Brock Dep. 61:22-24).

About three weeks before Bah's termination, some Millstone employees accused David Hall ("Hall"), a janitor at Millstone, of making sexually harassing comments.  (Brock Dep. 12:12-13:10; Bah Dep. 181:20-183:15).  These comments included statements about how women's clothes fit on them.  (Brock Dep. 14:10-11).  Neuberger and Brock investigated these allegations by meeting with Hall and the other employees involved in the conversation where

---

[7] Bah marks this fact as disputed, repeating his arguments regarding whether Millstone was actually concerned about safety issues.  The Court takes this fact as undisputed for the purposes of summary judgment.

[8] Bah states the failure to disclose either Muntz' name or the nature of his allegations was contrary to Millstone policy.  However, the evidence he cites in support states "To conduct an effective investigation and take appropriate corrective action, it *may be necessary* for the investigator to inform the alleged harasser of the complainant's identity and nature of the allegations."  (From Sex to Religion at 72) (emphasis added).  The cited evidence does not support a claim that Millstone policy was to disclose the nature of sexual harassment claims or the name of the accuser to the accused.

[9] Millstone disputes that Millstone weighed Muntz' word versus Bah's word.  However, both Neuberger and Brock agreed with that characterization in their depositions.

Hall made the comments. (Brock Dep. 13:3-14:9). At this meeting, Brock and Neuberger told the employees involved that Millstone would take further disciplinary action if these kinds of comments persisted. (Brock Dep. 14:4-9). Brock and Neuberger then placed notes in the disciplinary files of everyone involved in the conversation. (*Id.* 14:18-15:4). Hall is a black male from the United States. (Bah Dep. 183:10-16).

On November 23, 2011, Bah filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination because of national origin and religion. (Charge of Discrimination, D.E. # 22-3). Bah also filed a claim for discrimination because of race. (Bah Dep. 174:20-24). At Bah's deposition, he could not identify any derogatory comments towards him from Millstone management regarding Bah's race, national origin, or religion. (Bah Dep. 187:10-194:10). Bah stated at the time Millstone terminated him that he felt his termination was due to his race, sex, national origin, and religion. (Bah Dep. 152:23-153:7; 171:13-16).

After receiving a right-to-sue letter from the EEOC, Bah sued Millstone in this Court, alleging causes of action under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Compl. ¶¶ 2, 3).

## STANDARD OF REVIEW

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] In reviewing a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence[,]"[11] but instead must view the evidence in the light most favorable to the nonmoving

---

[10] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[11] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

party.[12]  When the movant supports their motion with documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[13]  It is not sufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts."[14]  These facts must constitute more than a scintilla of evidence, and must rise to the level that a reasonable juror could find by a preponderance of the evidence the nonmoving party is entitled to a verdict.[15]  To determine whether it should grant summary judgment, the court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[16]

A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial."[17]  The Sixth Circuit interprets this to mean that "the nonmoving party . . . 'put up or shut up' [on] the critical issues of his asserted causes of action."[18]

---

[12] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[13] *Celotex*, 477 U.S. at 324.

[14] *Matsushita*, 475 U.S. at 586.

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[16] *Id.* at 251-52.

[17] *Celotex*, 477 U.S. at 322.

[18] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

## ANALYSIS

Bah brings claims against Millstone for discrimination based on race, religion, and

national origin under both 42 U.S.C. § 1981 and Title VII.[19] Claims of discrimination under 42

U.S.C. § 1981 are governed by the same standards and burden-shifting framework as claims

under Title VII.[20] Where a Title VII plaintiff does not allege direct evidence of discrimination or

retaliation, courts use the *McDonnell Douglas/Burdine*[21] framework to determine whether a

plaintiff introduces sufficient circumstantial evidence to survive summary judgment.[22] Bah

seems to concede he presents no direct evidence of discrimination,[23] so the Court will use the

*McDonnell Douglas/Burdine* framework to analyze his claims.

Under this framework, a plaintiff bears the burden of production to establish a prima

facie case of discrimination.[24] If a plaintiff establishes a prima facie case, the burden of

production shifts to the defendant to produce evidence of a legitimate, non-discriminatory (or

---

[19] The Court notes that 42 U.S.C. § 1981 prohibits discrimination because of race only. It does not prohibit discrimination on the basis of religion or national origin. *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987); *Amini v. Oberlin Coll.*, 259 F. 3d 493, 502 (6th Cir. 2001); *see also El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 462 (6th Cir. 2006). Therefore, the Court **GRANTS** Millstone's Motion for Summary Judgment with respect to Bah's claims of discrimination based on national origin or religion under § 1981.

[20] *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 582 (6th Cir. 1992); *Raines v. Shoney's, Inc.*, 909 F. Supp. 1070 (E.D. Tenn. 1995); *Bruce v. W. Auto Supp. Co.*, 669 S.W.2d 95 (Tenn. Ct. App. 1984)).

[21] Referring to *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[22] *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

[23] (Pl.'s Mem. in Opp'n to Def.'s Mot. 10, D.E. # 25).

[24] *McDonnell Douglas*, 411 U.S. at 802.

retaliatory) reason for its actions. [25]   If the defendant produces evidence of a legitimate, non-

discriminatory reason, the burden of production shifts back to the plaintiff to show the

defendant's proffered explanation is pretextual.[26]   While the "ultimate burden of persuading the

trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times

with the plaintiff,"[27] the Sixth Circuit cautions district courts that the plaintiff's burden under the

*McDonnell Douglas/Burdine* framework is "not onerous" and is "easily met".[28]

<u>Prima Facie Case</u>

To make out a prima facie case for race, national origin, or religious discrimination under

the *McDonnell Douglas/Burdine* framework, a plaintiff must make four showings:

(1) he is a member of a protected class;

(2) he was qualified for the position for which he applied or which he held;

(3) he suffered an adverse employment action, and

(4) he was treated differently than similarly-situated employees outside his protected

class. [29]

Millstone does not contest the second[30] or third elements of Bah's prima facie case, so the Court

will focus on first and fourth elements.

---

[25] *Id.*

[26] *Burdine*, 450 U.S. at 253.

[27] *Burdine*, 450 U.S. at 253.

[28] *See, e.g., Equal Employment Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

[29] *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001); *Haley v. Gen. Elec. Co.*, 3 Fed. App'x 240, 247 (6th Cir. 2001).

[30] In a footnote, Millstone makes a somewhat halfhearted attempt to argue Bah's record of absenteeism is evidence he was not qualified for the job.  This misunderstands the nature of

Bah makes out the first element of the prima facie case for discrimination on the basis of race, religion, or national origin. Bah is a member of a protected class—he is black, he is Muslim, and he comes from the Republic of Guinea. Each is a class protected from discrimination on the basis of race, religion, or national origin.[31] However, Millstone argues that Bah has presented no evidence that Neuberger knew of Bah's religion or national origin[32] and presents the Court with citations to several out-of-circuit cases holding that a plaintiff cannot make out a prima facie case of discrimination unless the relevant decision maker knew of the plaintiff's protected class.[33]

This rule strikes the Court as both practical and commonsensical. However, the rule does not apply to these facts. Bah has introduced evidence from which a reasonable juror could conclude Neuberger was aware of Bah's religion: Bah regularly engaged in prayer sessions at work in an area designated for such use. Although Millstone contends Neuberger was not involved in the decision to allow a prayer area for Muslim workers, the Court finds that a juror could draw a reasonable inference of general knowledge among Millstone employees at the Memphis facilities that Bah is a practicing Muslim. Similarly, Bah has introduced evidence from which a reasonable juror could conclude Neuberger knew Bah was at least from outside of the United States. Bah listed the fact he was a permanent resident of the United States on his

_____

the *McDonnell Douglas/Burdine* burden-shifting structure. At the first step of the analysis, it is up to the plaintiff to introduce evidence he was qualified for the job he held. Millstone makes no argument Bah fails to do so.

[31] 42 U.S.C. § 2000e.

[32] Sensibly, Millstone makes no claim Neuberger was unaware of Bah's race.

[33] *Geraci v. Moody-Tottrup Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996); *Beasley v. Health Care Serv. Corp.*, 940 F.2d 1085, 1088 (7th Cir. 1991); *Ringgold v. Freedom Fin. Network, LLC*, No. C 10-1531 MHP, 2010 WL 3222420, at *3 (N.D. Cal. Aug. 13, 2010); *Brennan v. Metro. Opera Ass'n, Inc.*, 78 Fair Empl. Prac. Cas. (BNA) 1291, at *9 (S.D. N.Y. 1998).

application for employment. Bah also notes that it was general knowledge at the Memphis facility that he was from Africa. Although these are slim reeds on which to base a reasonable inference, the Court finds them sufficient at least to satisfy the minimal standards required by Rule 56.

With respect to his national origin-based discrimination claims, the Court finds Bah fails to make out the fourth element of his prima facie case. A plaintiff may prove this element by showing a similarly-situated employee (a "comparator") outside of the protected class received preferential treatment.[34] A plaintiff must show that such comparators are nearly identical in all relevant aspects.[35] In the context of an allegedly discriminatory disciplinary action, a court considers factors identified in *Mitchell*:

> the individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.[36]

Bah advances Hall as a comparator employee outside of his protected class. Hall's country of origin is the United States, so he is outside the protected class for Bah's claim of discrimination based on national origin. However, because Hall is black and Bah directed the Court to no evidence of Hall's religion, Hall is not an appropriate comparator for Bah's religion and race discrimination claims.

Both Hall and Bah dealt with the same supervisors and were subject to the same policies. Neuberger and Brock were involved in the investigation of the sexual harassment charges against

---

[34] *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998).

[35] *Id.* at 352 (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

[36] *Mitchell*, 964 F.2d at 583.

Bah. Neuberger and Brock also handled the investigation of the sexual harassment charges against Hall. There appears to be no dispute regarding whether Bah and Hall were subject to Millstone's sexual harassment policies.

However, Bah and Hall were not engaged in the same conduct for purposes of the *Mitchell* analysis. Although both parties engaged in some form of sexual harassment prohibited by Millstone's policies, Hall merely made comments about how women's clothes fit on them whereas Bah allegedly made physically threatening remarks to Muntz. Because of the difference in severity between the actions committed by Hall and Bah, the Court finds that Hall is not an adequate comparator employee. As such, there is no evidence that a similarly situated employee outside the protected class received preferential treatment by Millstone. Therefore, Bah fails to prove the fourth element of his prima facie case for discrimination. Even if Bah succeeded in proving a prima facie case for discrimination by showing that a comparator employee was treated preferentially, as discussed below, Bah cannot meet his burden to show that Millstone's proffered reason for terminating him was pretextual.

Legitimate Non-Discriminatory Reason

Assuming that Bah made out a prima facie case for discrimination based on national origin under Title VII, the burden of production would shift to Millstone to produce evidence of a legitimate, non-discriminatory reason for its actions. [37] The Court finds that Millstone has offered a legitimate reason for terminating Bah in its contention that it terminated Bah based on Neuberger's belief in Muntz' allegations that Bah sexually harassed him and possessed a gun on company property in violation of Millstone's Handbook. These are legitimate reasons because, "if believed by the trier of fact, [they] would support a finding that unlawful discrimination was

---

[37] *McDonnell Douglas*, 411 U.S. at 802.

not the cause of employment action." [38] This shifts the burden back to Bah to demonstrate that

Millstone's proffered reason was pretextual.

Pretext

To rebut Millstone's rationale and establish pretext, Bah must show "either (1) that the

proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate

discharge, or (3) that they were insufficient to motivate discharge."[39]  Bah does indicate which

theory for pretext he is advancing, but argues that Millstone did not have a legitimate reason to

terminate and that Millstone failed to make an informed decision before taking action.  To avoid

a finding of pretext, "the employer must be able to establish its reasonable reliance on the

particularized facts that were before it at the time the decision was made."[40]  To determine

whether "an employer reasonably relied on the particularized facts then before it, we do not

require that the decisional process used by the employer be optimal or that it left no stone

unturned."[41]  Rather, "the key inquiry is whether the employer made a reasonably informed and

considered decision before taking an adverse employment action."[42]  Bah argues that Millstone

never took a written complaint from Muntz and failed to interview Bah or investigate the

allegations further after speaking with Muntz.

---

[38] *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (citing *Burdine*, 450 U.S. at 254-55) (internal quotations and emphasis omitted).

[39] *Goller v. Ohio Dept. of Rehabilitation & Correction*, 285 Fed. Appx. 250, 258 (6th Cir. 2008) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

[40] *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006).

[41] *Id.*

[42] *Id.*

However, the Court finds that Millstone has established that it reasonably relied on

Muntz' allegations by making an informed decision before terminating Bah. After Muntz spoke

with Brock, Brock brought the complaint to the attention of Neuberger and Cusson.  They then

immediately contacted Millstone's counsel and over the next few days, they interviewed Muntz

several times.  Although the management did not interview Bah regarding the allegations,

Neuberger states he did not interview Bah because of his concern that Bah might have a gun in

his vehicle.  Based on these interviews and an additional conversation with Bowen, Neuberger

and Brock reasonably believed in the credibility of Muntz' allegations and terminated Bah on

that basis.  Bah's contention that a more thorough investigation would have revealed that the

allegations was false does not make Millstone's belief at the time of discharge an issue for the

jury.

As such, Bah has not presented sufficient material evidence to rebut Millstone's proffered

reasons for Bah's termination, and therefore, Millstone's Motion for Summary Judgment

regarding Bah's claims of discrimination is hereby **GRANTED**.


**IT IS SO ORDERED.**


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  September 4, 2013.